IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROGER L. CHAPPELL,                       )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )    1:10CV384
                                         )
CAROLYN W. COLVIN,[1]                    )
Commissioner of Social Security,         )
                                         )
            Defendant.                   )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Roger Chappell ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") in June 2006, alleging a disability onset date of November 1,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2005. (Tr. at 77-84.)[2]  His applications were denied initially (Tr. at 34, 36, 38-42) and upon reconsideration (Tr. at 35, 37, 46-53).  Thereafter, he requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. at 54), which Plaintiff attended with his attorney on September 11, 2007 (Tr. at 8).  The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 15) and, on April 27, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-3).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2006.
>
> 2.  The claimant has not engaged in substantial gainful activity since November 1, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: hypertension and obstructive sleep apnea with depression listed as [a] non-severe impairment (20 CFR 404.1520(c) and 416.920(c)).
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #7].

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).

(Tr. at 10, 13.)

Considering Plaintiff's age and education, along with the above findings regarding residual functional capacity ("RFC"), the ALJ ultimately determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 14.) He therefore determined that Plaintiff was not under a "disability," as defined in the Act, from his alleged onset date through the date of the decision. (Tr. at 15.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from two severe impairments, hypertension and obstructive sleep apnea, along with one non-severe impairment, depression. (Tr. at 10.) The ALJ found at step three that none of these impairments met or equaled a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform the full range of medium work. (Tr. at 13.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

his past relevant work. However, he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other jobs available in the community and was therefore not disabled. (Tr. at 14-15.)

Plaintiff claims that substantial evidence fails to support the Commissioner's findings at steps four and five. He first contends that the ALJ erred in failing to discuss any RFC limitations resulting from Plaintiff's obstructive sleep apnea. (Pl.'s Br. [Doc. #10] at 6-8.) Plaintiff also challenges the ALJ's credibility determination, arguing that the ALJ "based [his] negative credibility evaluation solely on the RFC assessment completed by the State agency consultants" whose opinions were "entitled to no special significance under the standards of 20 C.F.R. § 404.1527(e)." (Id. at 6.)[6] Defendant argues otherwise and urges that substantial evidence supports both Plaintiff's assessed RFC and the determination that Plaintiff was not disabled. (Def.'s Br. [Doc. # 15] at 8.)

A.   RFC Determination

First, Plaintiff claims that, "[u]nder the standards of 20 CFR §§ 404.1521(a) and 416.921(a), the ALJ cannot find that sleep apnea is a severe impairment and also fail to find any limitations on Plaintiff's RFC resulting from that impairment." (Pl.'s Br. at 8.) The regulations in question define a "severe impairment" as one that significantly limits a plaintiff's ability to do

---

[6] This regulation is now designated as 20 C.F.R. § 1527(d).

7

basic work activities. (Id.)⁷ Plaintiff therefore argues that a severe impairment "must result in some significant limitation of Plaintiff's RFC." (Id.)

However, Plaintiff misinterprets the relationship between a step two finding of severity and the ALJ's later assessment of Plaintiff's RFC.

> The determination of a "severe" impairment at step two of the sequential evaluation process is a *de minimis* test, designed to weed out unmeritorious claims. See Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). A finding of *de minimis* limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four. See, e.g., Sykes v. Apfel, 228 F.3d 259, 268 n. 12 (3d Cir. 2000).

Hughes v. Astrue, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished); see also Burkstrand v. Astrue, 346 F. App'x 177, 180 (9th Cir. 2009) (unpublished) ("To the extent Burkstrand suggests that a finding of severe impairment at Step 2 necessarily requires limitations on a claimant's ability to perform basic work activities, this argument has no merit."). Accordingly, the ALJ was not required to separately include limitations from each of Plaintiff's step two severe impairments when assessing his RFC, and Plaintiff's argument to that effect must fail.

Moreover, the state agency consultants in this case reviewed all of Plaintiff's medical information, including information related to his sleep apnea, in formulating their opinions, and the ALJ relied upon those opinions in adopting the RFC in this case. Plaintiff does not point to any evidence supporting his contention that his sleep apnea resulted in greater limitations to

---

⁷ The regulations cited by Plaintiff actually define "non-severe impairments" as those which do not significantly limit a claimant's physical or mental ability to do basic work activities. They implicitly define "severe impairments" as the reverse.

8

his RFC, other than his own assertions of his symptoms, which the ALJ rejected as not credible to the extent inconsistent with the RFC. In these circumstances, the ALJ's determination is supported by substantial evidence.

B.  Credibility

Plaintiff next challenges the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. In particular, he claims that the ALJ erred by basing his "negative credibility evaluation solely on the RFC assessment completed by the State agency consultants." (Pl.'s Br. at 6.)

In Craig v. Chater, 76 F.3d at 594-95, the Fourth Circuit outlined the two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). In the present case, Plaintiff alleges fatigue as a result of his documented obstructive sleep apnea (see, e.g., Tr. at 25), and residual shoulder pain from a car accident in 1997 (Tr. at 11). The ALJ determined that these conditions "could reasonably be expected to produce [his] alleged symptoms" (Tr. at 14).

Plaintiff's case therefore hinges on the second part of the test, which requires that the ALJ consider all available evidence, including Plaintiff's statements about his symptoms, in order to evaluate the "intensity and persistence" of the his pain or other symptoms, and "the extent to which it affects [his] ability to work." Craig, 76 F.3d at 596. Notably, while the ALJ must

9

consider Plaintiff's statements and other subjective evidence at this step, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause" the pain or other symptoms. Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Thus, a plaintiff's "symptoms . . . will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

>    (i) Your daily activities;
>
>    (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
>    (iii) Precipitating and aggravating factors;
>
>    (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
>    (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
>    (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors, and has heard Plaintiff's testimony and observed his demeanor, the ALJ's credibility determination is entitled to deference. Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

Here, Plaintiff asserts that the ALJ failed to consider the above factors at all and instead based his findings entirely on the RFC assessments completed by State agency consultants. (Pl.'s Br. at 6.) He contends that "these assessments are opinions on RFC, an issue reserved to the Commissioner and entitled to no special significance" under the standards of 20 CFR § 404.1527(d). (Id.) Therefore, he concludes, "it was error to use those assessments as the sole basis for the negative credibility finding included in the decision." (Id.) In other words, Plaintiff's approach challenges the ALJ's credibility determination on two grounds. First, Plaintiff argues that the ALJ assigned improper weight to medical source opinions by adopting the State agency consultants' RFC assessments. Second, Plaintiff claims that, because the ALJ mistakenly based his credibility findings on these assessments alone, substantial evidence fails to support his negative findings.

As Plaintiff correctly points out, under 20 C.F.R. §§ 404.1527(d) and 416.927(d), an ALJ must "not give any special significance to the source of an opinion on issues reserved to the Commissioner." (Pl.'s Br. at 6.) However, the Social Security Regulations further provided that:

11

> State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled.

20 CFR § 404.1527(e)(2)(i). See SSR 96-5p; SSR 96-6p. Specifically as to RFC assessments, Social Security Rulings provide that, at the hearing level, "RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)." SSR 96-6p. Such findings "are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence." Id. Like any medical opinion, a consultant's opinions regarding a claimant's physical or mental limitations must be evaluated in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), i.e., an ALJ must consider factors such as the length and nature of the treatment relationship as well as the supportability of the opinion and its consistency with the record as a whole. An ALJ is entitled to give great weight to a State agency consultant's RFC assessment where there is a sufficient basis in the record to do so. SSR 96-6p; see also Bryant v. Astrue, Civil No. 3:08CV719, 2009 WL 6093969, at *9 (E.D. Va. July 15, 2009) (unpublished); Bracey v. Astrue, No. 5:07-CV-265-FL, 2009 WL 86572, at *3 (E.D.N.C. Jan. 6, 2009) (unpublished).

In the present case, by adopting their conclusions, the ALJ implicitly assigned substantial weight to the State agency consultants' opinions. With the exception of his own testimony, Plaintiff points to no medical or other evidence contrary to these assessments, and none is

apparent from the record. In making his determination, the ALJ conducted a detailed review of the medical evidence in the record. (Tr. at 11-12.) The ALJ also noted Plaintiff's daily activities, which include yard work, cleaning, grocery shopping, meal preparation, and caring for pets. (Tr. at 12, 22, 191, 275.) When applying the credibility factors set out in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), this evidence supports the ALJ's decision to discount Plaintiff's testimony as to severity. (Tr. at 12, 22, 191, 275.) Absent contradictory evidence, or any evidence supporting Plaintiff's subjective statements regarding his symptoms, substantial evidence supports the ALJ's credibility determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 7th day of February, 2014.

                                               /s/ Joi Elizabeth Peake
                                               United States Magistrate Judge